UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tracy Fjeldberg and<br>Michelle Fjeldberg,<br>Plaintiffs,<br><br>v.<br><br>GC Services Limited Partnership, and<br>John Doe 1 (aka "Paul"), and<br>John Doe 2 (aka "Rodney"), and<br>John Doe 3 (aka "Corey"),<br>Defendants. | COMPLAINT AND<br>DEMAND FOR A JURY TRIAL |

INTRODUCTION

1.  This is an action for damages brought by Tracy and Michelle Fjeldberg against GC Services Limited Partnership and its employees, Paul, Rodney and Corey, for their repeated violations of the Fair Debt Collection Practices Act and invasions of privacy in an attempt to collect an alleged debt.

JURISDICTION

2.  Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction exists for state law claims under 28 U.S.C. § 1367.

3.  Venue is proper in this district because the relevant acts and transactions occurred within Minnesota, Plaintiffs reside within Minnesota and Defendants transact business within Minnesota.

PARTIES

4.  Plaintiff, Tracy Fjeldberg, is a natural person residing in the City of Albert Lea, County of Freeborn and State of Minnesota. He is a "consumer" or a "person" affected by a

violation of the FDCPA, as those terms are defined by 15 U.S.C. §§ 1692a(3) and 1692k.

5.     Plaintiff, Michelle Fjeldberg, is a natural person residing in the City of Albert Lea, County of Freeborn and State of Minnesota. She is a "consumer" or a "person" affected by a violation of the FDCPA, as those terms are defined by 15 U.S.C. §§ 1692a(3) and 1692k.

6.     Defendant, GC Services Limited Partnership, is a Texas corporation engaged in the business of collecting debts in Minnesota with its principal place of business located at 6330 Gulfton, Houston, Texas, 77081 ("Defendant GC Services"). Defendant GC Services is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

7.     Defendant, John Doe 1, also known as "Paul", is a natural person employed by Defendant GC Services as a debt collector at all times relevant to this complaint ("Defendant Paul"). Defendant Paul is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6). Upon information and belief, Defendant Paul is located at Defendant GC Services' collection agency branch at 440 Airport Road, Suite C, Elgin, Illinois 60123.

8.     Defendant, John Doe 2, also known as "Rodney," is a natural person employed by Defendant GC Services as a debt collector at all times relevant to this complaint ("Defendant Rodney"). Defendant Rodney is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6). Upon information and belief, Defendant Rodney is located at Defendant GC Services' collection agency branch at 440 Airport Road, Suite C, Elgin, Illinois 60123.

9.     Defendant, John Doe 3, also known as "Corey," is a natural person employed by Defendant GC Services as a debt collector at all times relevant to this complaint ("Defendant Corey"). Defendant Corey is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6). Upon information and belief, Defendant Corey is located at Defendant GC Services' collection agency branch at 440 Airport Road, Suite C, Elgin, Illinois 60123.

# FACTS

10. Sometime prior to May 2010, Plaintiffs allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a credit card from Chase Bank USA, N.A. ("the debt" or "the alleged debt").

11. Upon information and belief, on or around June 1, 2010, the alleged debt was cosigned, placed or otherwise transferred to Defendant GC Services for collection from Plaintiffs.

12. Throughout the months of July and August of 2010, Defendants made repeated attempts to collect the alleged debt from Plaintiffs by making telephone calls to Plaintiffs' home phone, cell phones and workplace. The following is a partial summary of the collection calls received by Plaintiffs from Defendants:

| Date | Time | To: | From: |
|---|---|---|---|
| July 12, 2010 | 1:48 p.m. | (507) 377-4378 – City Garage | (507) 665-1078 |
| July 26, 2010 | 7:34 a.m. | (507) 377-4300 – Uptown Garage | (507) 665-1078 |
| July 26, 2010 | 7:45 a.m. | (507) 377-4378 – City Garage | (507) 665-1078 |
| July 27, 2010 | 8:13 a.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |
| July 27, 2010 | 9:43 a.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |
| July 28, 2010 | 4:09 p.m. | (507) 402-4280  - MF Cell | (713) 300-7317 |
| July 30, 2010 | 8:11 a.m. | (507) 402-4280 – MF Cell | (713) 300-7317 |
| August 7, 2010 | 8:22 a.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |
| August 11, 2010 | 10:55 a.m. | (507) 402-4280 – MF Cell | (507) 665-1078 |
| August 11, 2010 | 10:58 a.m. | (507) 377-4378 – City Garage | (507) 665-1078 |
| August 11, 2010 | 10:59 a.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |
| August 11, 2010 | 11:00 a.m. | (507) 373-3640 – Home | (507) 665-1078 |
| August 13, 2010 | 8:11 a.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |
| August 13, 2010 | 8:12 a.m. | (507) 402-4280 – MF Cell | (507) 665-1078 |
| August 16, 2010 | 10:45 a.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |
| August 16, 2010 | 6:27 p.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |
| August 16, 2010 | 6:28 p.m. | (507) 402-4280 – MF Cell | (507) 665-1078 |
| August 17, 2010 | 1:22 p.m. | (507) 402-4280 – MF Cell | (507) 665-1078 |
| August 17, 2010 | 1:23 p.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |
| August 19, 2010 | 4:50 p.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |
| August 21, 2010 | 8:36 a.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |

| | | | |
|---|---|---|---|
| August 21, 2010 | 8:37 a.m. | (507) 402-4280 – MF Cell | (507) 665-1078 |
| August 23, 2010 | 2:53 p.m. | (507) 383-6541 - TF Work Cell | (507) 665-1078 |
| August 23, 2010 | 2:53 p.m. | (507) 402-4280 – MF Cell | (507) 665-1078 |
| August 23, 2010 | 2:54 p.m. | (507) 373-3640 - Home | (507) 665-1078 |

13. On several occasions, Plaintiffs requested verification of the alleged debt from Defendants. Plaintiffs wanted to confirm that the alleged debt belonged to them and that the amount of the debt was correct. Defendants repeatedly refused to send verification of the alleged debt.

## FIRST COLLECTION CALL TO WORKPLACE

14. On July 12, 2010, Defendant Paul telephoned Tracy Fjeldberg's workplace, the Albert Lea City Garage. Linda Lau, the office support specialist, answered the telephone call. Defendant Paul demanded to speak with Tracy Fjeldberg. Ms. Lau told Defendant Paul that Tracy Fjeldberg was unavailable. Defendant Paul demanded to leave a message for Tracy Fjeldberg. Ms. Lau wrote down the message from Defendant Paul, which requested that Tracy Fjeldberg call Defendant Paul from "GC Services" at "1-866-749-7276 at extension 6007." Ms. Lau wrote the message on an "Important Message" pink slip. See attached Exhibit A.

## SECOND COLLECTION CALL TO WORKPLACE

15. On July 26, 2010, at approximately 7:34 a.m., Defendant Corey telephoned the "Uptown" location of the Albert Lea City Garage in an attempt to collect the alleged debt from Tracy Fjeldberg. Kathy Lutteke, an employee of the City Garage, answered Defendant Corey's phone call. Defendant Corey demanded to speak with Tracy Fjeldberg. Ms. Lutteke told Defendant Corey that Tracy Fjeldberg was unavailable. Defendant Corey demanded that Ms. Lutteke deliver a message to Tracy Fjeldberg that he should call "Corey" at "1-800-749-7267, extension 2934."

16. After Ms. Lutteke ended the phone call with Defendant Corey, she immediately called the City Garage's main office and spoke with Ms. Lau. Ms. Lutteke told Ms. Lau that a person named "Corey" called for Tracy Fjeldberg and he requested that Tracy Fjeldberg call him back at "1-800-749-7267, extension 2934." Ms. Lau wrote down the message from Defendant Corey on an "Important Message" pink slip. See attached "Exhibit B."

### THIRD COLLECTION CALL TO WORKPLACE

17. Within fifteen minutes after receiving the message from Ms. Lutteke, Ms. Lau received a telephone call at City Garage from Defendant Paul. Ms. Lau saw on her telephone's caller identification system that Defendant Paul was calling from the same telephone number as the message she just received from Defendant Corey. Defendant Paul requested to speak with Tracy Fjeldberg. Ms. Lau informed Defendant Paul that she had received a message from Defendant Corey a few minutes earlier that requested that Tracy Fjeldberg call the same number. At this point, Defendant Paul became angry and rude toward Ms. Lau. Defendant Paul told Ms. Lau in no uncertain terms that he wanted Mr. Fjeldberg to call *him* back. At this point, Ms. Lau told Defendant Paul that it was against the City Garage's policy to accept personal calls for employees. Defendant Paul feigned ignorance of the policy and demanded once again that Ms. Lau leave a message for Mr. Fjeldberg to call him at his extension. Defendant Paul then hung up the telephone on Ms. Lau before she could respond. See attached "Exhibit C." Ms. Lau wrote down the second message on the same pink slip as the first message. See attached "Exhibit B."

### MORE HARASSMENT

18. On July 27, 2010, Tracy Fjeldberg started his workday by receiving his work orders from his supervisor at the City Garage. After receiving his orders, Tracy Fjeldberg went to the front office where Ms. Lau asked him to wait a moment. Ms. Lau told Tracy Fjeldberg that

5

she had received several messages for him. Ms. Lau handed to Tracy Fjeldberg the three messages that she had received from Defendants. Ms. Lau said to Tracy Fjeldberg, "who ever that was calling was really nasty and very rude to me." Tracy Fjeldberg was embarrassed and humiliated that someone attempting to reach him treated his co-worker rudely.

19. On July 27, 2010, at 8:13 a.m., Tracy Fjeldberg called the phone number on the message that he received from Ms. Lau. Tracy Fjeldberg wanted to make a quick call to inform Defendants not to call his workplace any further. Tracy Fjeldberg asked to speak with Defendants Paul or Corey. Defendant Paul answered the phone call. Tracy Fjeldberg asked Defendant Paul why he was calling his workplace and acting rudely toward his coworker. Defendant Paul stated that he was calling to collect a debt from a Chase credit card for $11,200.00. Tracy Fjeldberg informed Defendant Paul that he was unaware of the debt and that he would need to discuss the matter with his wife. Defendant Paul berated Tracy Fjeldberg for not knowing about the debt. Defendant Paul demanded to know if Tracy Fjeldberg belonged to a union and the amount of his take home pay. Tracy Fjeldberg responded that he didn't known why that information was needed and that he needed to discuss the matter with his wife. Defendant Paul continued to berate Tracy Fjeldberg for failing to return the multiple messages that Defendant Paul had left at his workplace. Defendant Paul told Tracy Fjeldberg that he had until 10:00 a.m. to pay the debt or he would be "turning [him] in." At that point, Defendant Paul transferred the telephone call to Defendant Rodney. Defendant Rodney continued to insist that Tracy Fjeldberg pay the debt and that it would need to be paid by 10:00 a.m.

20. During this telephone conversation with Defendants Paul and Rodney, Tracy Fjeldberg became increasing alarmed at the threats and time limits that he was being forced to meet. Tracy Fjeldberg was so worried that he immediately drove to his wife's workplace while

he was talking with the Defendants on the phone. Michelle Fjeldbrerg is a nursing aid at an assisted living facility where she cares for elderly and disabled patients.  When Tracy Fjeldberg arrived at Michelle Fjeldberg's work he asked one of her coworkers, who was outside the building, if she would ask his wife to meet him in the parking lot. The coworker went inside and told Michelle Fjeldberg that her husband was outside and needed to speak with her. Michelle Fjeldberg was alarmed that he husband was outside. When she went outside, Tracy Fjeldberg told her about the telephone call from Defendants and handed her the phone. Defendant Rodney began to demand payment from Michelle Fjeldberg. Michelle Fjeldberg was confused about why they were calling because she had never heard of Defendant GC Services and she was working with a debt settlement company. Defendant Rodney told her that he had never heard of the debt settlement company and that she needed to make a payment before 10 a.m. or she would be "turned in." Michelle Fjeldberg tried to explain to Defendant Rodney that she was at her workplace and unable to discuss the debt at that time. She told him repeatedly that she would call him back at a more convenient time, after work hours. Defendant Rodney became increasingly angry and told Michelle Fjeldberg that it was not his problem that she was at work and the debt needed to be taken care of that day or he would "turn [them] in." Michelle Fjeldberg was frightened and needed to return to work, so she offered to pay $200.00. Michelle Fjeldberg hung up the phone. The phone call lasted 46 minutes.

21.     Defendant Rodney called Tracy Fjeldberg back six minutes later and demanded to know if the Plaintiffs had made a decision about paying the debt. Tracy Fjeldberg said that they would play $200.00 and he gave Defendant Rodney his checking account information. Defendant Rodney once again said that it would only buy them 24 – 48 hours and hung up the phone.

7

22. Later on that day, after Plaintiffs had time to calm down from the abusive phone calls they received from Defendants, they cancelled the $200.00 payment to Defendant GC Services. Plaintiffs believed that they should verify the debt before paying a random debt collector.

23. On July 30, 2010, at 8:11 a.m., Defendant GC Services called Michelle Fjeldberg's cell phone number and left a message. The phone number displayed on her cell phone read "713-300-7317." The caller did not identify the call was from a debt collector.

24. On August 7, 2010, Tracy Fjeldberg contacted Defendant GC Services to discuss the alleged debt and request, once again, a verification of the debt. Defendant Rodney answered Tracy Fjeldberg's telephone call. Tracy Fjeldberg asked to have a statement that outlined the entire balance due, including principal, interest and collection costs. During this phone call Defendant Rodney became abusive to Tracy Fjeldberg. Defendant Rodney stated, "We can make this as confrontational and difficult as you want and jump through as many hoops as you want. I have no problem with that, sir. That's what people do in your situation." Tracy Fjeldberg was frustrated at Defendant Rodney's unwillingness to send verification of the debt and hung up the phone.

**FOURTH COLLECTION CALL TO WORKPLACE**

25. On August 11, 2010, at 10:57 a.m., a debt collector from Defendant GC Services called the Albert Lea City Garage and requested to speak with Tracy Fjeldberg. Larry Schroader, a utility foreman and Tracy Fjeldberg's supervisor, answered the telephone call and told the collector that Tracy Fjeldberg was unavailable. The debt collector was very upset. Mr. Schroader asked for a name and phone number so that he could ask Tracy Fjeldberg to return his phone call. Mr. Schroader was concerned that the call was from a family member and that there was a

family emergency that would require Tracy Fjeldberg to immediately return the phone call. The debt collector refused to tell Ms. Schroader his name or phone number. Larry explained that Tracy Fjeldberg was out in his truck and he would need to have Tracy Fjeldberg return the phone call. The debt collector became angry and stated, "Just get him to the phone." Mr. Schroader told the debt collector Tracy Fjeldberg was in the truck at a site and he couldn't just come to the phone. At this point, the debt collector told Mr. Schroader, "He's a city employee, get him to the phone." Mr. Schroader told the debt collector to hold on and that he would call Tracy Fjeldberg and ask him to return to the City Garage. Mr. Schroader put the debt collector on hold and called TRACY. Mr. Schroader told Tracy that he needed to head back to the garage because there was an emergency phone call for him and the caller would not give his name or phone number. Tracy told Mr. Schroader he would return to the Garage as quickly as possible. When Mr. Schroader picked up the phone to inform the caller that Tracy Fjeldberg was returning to the Garage to answer the phone call, the debt collector had hung up.

26.     When Mr. Schroader contacted Tracy Fjeldberg, Tracy became very nervous and scarred that something had happened to a family member, because there was no other reason a person would call him in a panic at the City Garage. During his phone call with Mr. Schroader, Tracy Fjeldberg received an incoming call from "1-507-655-1078", which is the phone number that appeared when Defendant GC Services called. Tracy did not answer the telephone call from Defendant GC Services because he was panicked about the phone call he just received at work. Tracy Fjeldberg called his wife on the way home to see if everything was ok. Michelle Fjeldberg told Tracy Fjeldberg that she had received two phone calls from Defendant GC Services that day and that it was probably them calling his work. When Tracy returned to the Garage, Mr.

Schroader told Tracy Fjeldberg about the entire exchange he had on the phone with the debt collector and that they had hung up.

## ADDITIONAL HARASSMENT

27. Throughout the month of August, Defendant Paul left several messages on Tracy Fjeldberg's cell phone, including the following:

> "This message is for Tracy Fjeldberg. My name is Paul. Return my call at 866-749-7276, my extension 6123."

> And,

> "Yeah, Mr. Fjeldberg this Paul over at GC Services where you are running out of time, the end of the month is coming. You do need to return my call immediately at 866-749-7276, extension is 6123."

> And,

> "Yeah, Tracy it's Paul over at GC Services. You need to return my call immediately at 866-749-7276, my extension is 6007."

## "SPOOFING" - CALLER IDENTIFICATION FRAUD

28. Throughout the period of time Defendants attempted to collect the alleged debt from Plaintiffs, Defendants' phone system created and displayed on the caller identification system of Plaintiffs' telephone a phone number with a Southern Minnesota area code, specifically "(507) 665-1078."

29. Defendant GC Services does not maintain a debt collection agency in the state of Minnesota or within the geographical area that is assigned an area code of "507."

30. Plaintiffs believed that they were receiving a phone call from a local person or business when Defendants initially called to collect the debt.

31. Upon information and belief, Defendant GC Services uses a telephone system that displays fictitious, local telephone numbers of the geographical area where the debtors they are attempting to collect debts from reside. This practice is called "spoofing."

## FALSE REPRESETATION OF AMOUNT OF THE DEBT

32. Upon information and belief, Defendants have demanded an amount of the debt that is inaccurate.

33. Plaintiffs do not legally owe an amount of $11,213.83, as described in the statement provided to Plaintiffs and demanded by Defendants in numerous phone calls.

34. Upon information and belief, Defendants have artificially inflated the amount.

## RESPONDEAT SUPERIOR LIABILITY

35. The acts and omissions of these individual Defendants, and the other debt collectors employed as agents by Defendant GC Services who communicated with Plaintiffs as more further described in this Complaint, were committed within the time and space limits of their agency relationship with their principal, Defendant GC Services.

36. The acts and omissions of Defendants Paul, Rodney and Corey and the other debt collectors employed by Defendant GC Services were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant GC Services in collecting consumer debts.

37. By committing these acts and omissions against Plaintiffs, these individual Defendants and these other debt collectors were motivated to benefit their principals, Defendant GC Services.

38. Defendant GC Services is therefore liable to Plaintiffs through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in

violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Minnesota tort law, in their attempts to collect this debt from Plaintiffs.

## COUNT I.
### Fair Debt Collection Practices Act Violations
### 15 U.S.C. § 1692

39. Plaintiffs repeat and incorporate by reference paragraphs 1 – 38.

40. Defendants violated the Fair Debt Collection Practices Act. Defendants' violations include, but are not limited to, the following contained in Paragraphs 41 – 53:

41. Defendants violated 15 U.S.C. §§ 1692d and 1692d(5) by causing Plaintiffs' home telephone and cell phones to ring throughout the months of July and August of 2010 with the intent to annoy, abuse and harass Plaintiffs.

42. Defendant Paul violated 15 U.S.C. §§ 1692b(1), 1692c(6), 1692d, and 1692f by contacting Tracy Fjeldberg's workplace on July 12, 2010, as described in Paragraph 14 of this Complaint.

43. Defendant Corey violated 15 U.S.C. §§ 1692b(1), 1692c(a)(1), 1692c(a)(3) 1692c(b), 1692d, and 1692d(6) by contacting Tracy Fjeldberg's workplace on July 26, 2010, as described in Paragraph 15 of this Complaint.

44. Defendant Paul violated 15 U.S.C. §§ 1692b(1), 1692b(3), 1692c(a)(1), 1692c(a)(3), 1692d, 1692d(6), 1692e, 1692e(11) and 1692f by contacting Tracy Fjeldberg's workplace on July 26, 2010, as describe in Paragraph 17 of this Complaint.

45. Defendants Paul and Rodney violated 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692e, 1692e(2)(A), 1692f and 1692f(1) during their telephone call with Plaintiffs on July 27, 2010, as described in Paragraphs 19 and 20 of this Complaint.

46. Defendant Rodney violated 15 U.S.C. §§ 1692d, 1692d(5), 1692e, 1692e(11) and 1692f during his telephone call with Tracy Fjeldberg on July 27, 2010, as described in Paragraph 21 of this Complaint.

47. Defendant GC Services violated 15 U.S.C. §§ 1692d, 1692d(5), 1692d(6), 1692e and 1692e(11) by leaving a message for Tracy Fjeldberg on July 30, 2010, as described in Paragraph 23 of this Complaint.

48. Defendant Rodney violated 15 U.S.C. §§ 1692d during this telephone call with Tracy Fjeldberg on August 7, 2010, as described in Paragraph 24 of this Complaint.

49. Defendants GC Services violated 15 U.S.C. §§ 1692b(1), 1692b(3), 1692c(a)(3), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(11) and 1692f by its debt collector employee contacting Tracy Fjeldberg's workplace on August 11, 2010, as described in Paragraph 25 of this Complaint.

50. Defendant Paul violated 15 U.S.C. §§ 1692d, 1692d(5), 1692d(6), 1692e, and 1692e(11) by leaving repeated messages for Tracy Fjeldberg, as described in Paragraph 27 of this Compalint.

51. Defendants violated 15 U.S.C. §§ 1692d, 1692d(6), 1692e, 1692e(10), 1692f by using a phone system that displayed an incorrect area code and phone number on Plaintiffs' caller identification system, as described in Paragraphs 28 – 31 of this Complaint.

52. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692f, 1692f(1) by attempting to collect an alleged debt of $11,213.83 from Plaintiffs.

### COUNT II.
### Invasion of Privacy by Intrusion on Seclusion

53. Plaintiffs incorporate by reference paragraphs 1 – 52.

54. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

55. Defendants intentionally interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiffs, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiffs' privacy.

56. Defendants intentionally caused harm to Plaintiffs' emotional well being by engaging in highly offensive conduct in the course of collecting this debt thereby invading and intruding upon Plaintiff's right to privacy.

57. Plaintiffs' had a reasonable expectation of privacy in Plaintiffs' solitude, seclusion, and or private concerns or affairs.

58. These intrusions and invasions by Defendants occurred in a way that would be highly offensive to a reasonable person in that position.

59. As a result of such invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial from each and every Defendant.

### PRAYER FOR RELIEF

**THEREFORE**, Plaintiffs respectfully request that judgment be entered against Defendants for the following:

### COUNT I.
### Violations of the Fair Debt Collection Practices Act

1. For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendants and for Plaintiffs;

2. For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against Defendants and for Plaintiffs;

3. For an award of costs and litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendants and for Plaintiffs;

## COUNT II.
### Invasion of Privacy by Intrusion Upon Seclusion

4. For an award of actual damages from each and every Defendant for the emotional distress suffered as a result of the FDCPA violations and invasions of privacy in an amount to be determined at trial and for Plaintiffs; and

5. For such other and further relief as may be just and proper.

Respectfully Submitted,

**HEANEY LAW FIRM, LLC**

Date: **4/7/11**

s/ Mark L. Heaney
Mark L. Heaney
Attorney I.D. #0333219
13911 Ridgedale Drive, Suite 110
Minnetonka, Minnesota 55305-1773
Telephone: (952) 933-9655
Facsimile:  (952) 544-1308
Email: mark@heaneylaw.com
*Attorney for Tracy and Michelle Fjeldberg*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA        )
                          ) ss.
COUNTY OF FREEBORN        )

Plaintiff Michelle Fjeldberg, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

|  | |
|---|---|
| s/ Michelle Fjeldberg | 4/7/11 |
| Michelle Fjeldberg | Date |

Subscribed and sworn to before me
this **7th** day of **April**, 20**11**.

**s/ Kimberly Kay Seadlund**
Notary Public

# VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA )
) ss.
COUNTY OF FREEBORN )

Plaintiff Tracy Fjeldberg, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

**s/ Tracy Fjeldberg**   4/7/11
Tracy Fjeldberg   Date

Subscribed and sworn to before me
this **7th** day of **April**, 20**11**.

**s/ Kimberly Kay Seadlund**
Notary Public